UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PLANTE & MORAN, PLLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Civil Action No. 17-cv-10093-DJC |
| ANDOVER HEALTHCARE, INC., | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.** February 16, 2018

**I. Introduction**

Plaintiff Plante & Moran, PLLC ("PM") has filed this lawsuit against Defendant Andover Healthcare, Inc. ("Andover"), alleging breach of contract. D. 1. Andover has answered PM's complaint with four counterclaims: breach of contract, fraud, negligent misrepresentation and unfair and deceptive acts in violation of Mass. Gen. L. c. 93A, §§ 2, 11 ("Chapter 93A"). D. 5-1.[1] Andover also pled two affirmative defenses in its answer: lack of consideration and fraud. D. 5 at 5. PM now moves to dismiss Andover's counterclaims and strike Andover's affirmative

---

[1] D. 5, Andover's answer, affirmative defenses and counterclaims, has the answer's numbered paragraphs as one through eighty-nine, D. 5 at 1-5; the affirmative defenses numbered paragraphs as one through two, D. 5 at 5; and the counterclaims' numbered paragraphs as one through thirty, D. 5 at 6-9. For clarity's sake as to the numbered paragraphs, the Court refers to Andover's counterclaims, D. 5 at 6-9, as D. 5-1, and the enumerated paragraphs therein remain consistent with Andover's filing.

1

defenses. D. 9. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART PM's motion.

## II. Standard of Review

### A. Motion to Dismiss

The Court will grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if a counterclaim fails to plead sufficient facts to "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). First, the Court must "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Second, the Court must determine whether the factual allegations support a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

When reviewing a motion pursuant to Rule 12(b)(6), the Court "may properly consider only facts or documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); see Fed. R. Civ. P. 12(d). The Court may make exceptions for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

2

B. **Motion to Strike**

Under Rule 12(f), "[t]he [C]ourt may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally disfavored," and "even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party." U.S. Securities and Exch. Comm'n v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1381, at 421-22 (3d ed. 2004)). Thus, "[a] motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." PetEdge, Inc. v. Yahee Techs. Corp., No. 15-cv-13171-ADB, 2017 U.S. Dist. LEXIS 66663, at *4 (D. Mass. May 2, 2017) (quoting Nothern, 400 F. Supp. 2d at 364).

III. **Factual Background**

The following summary is based upon the factual allegations in Andover's counterclaims, D. 5-1, which the Court accepts as true for the purposes of PM's motion to dismiss. Additionally, the Court includes facts referenced in the three contracts attached to PM's motion to dismiss, as they are central to all of counterclaims, referred to repeatedly therein, D. 5-1 ¶¶ 3-27, and their authenticity is not in dispute. See Alt. Energy, 267 F.3d at 33.

Andover, a Massachusetts corporation, and PM, a Michigan corporation, entered into three contracts between late July 2015 and December 2015, under which PM agreed to provide consulting services to Andover for a fee. D. 5-1 ¶¶ 3-4, 8-9, 11-12; see D. 9-2; D. 9-3; D. 9-4. The first contract, signed on or around August 5, 2015, provided that PM would deliver consulting services over a three-day period for a fee of $35,000 plus expenses. D. 5-1 ¶¶ 3-4; D. 9-2 at 9, 13. The contract provided that "[i]n the event an invoice is not paid timely, a late charge in the amount of 1.25% per month will be added." D. 9-2 at 9. Additionally, paragraph five of the contract,

3

labeled "Fee Quotes," stated that "PM will endeavor to advise Andover Healthcare in the event" that unforeseen circumstances occur requiring PM to adjust its fees, "however it is acknowledged that the exact impact on the Fee Quote may not be determinable until the conclusion of the engagement." D. 9-2 at 11. Andover paid PM $35,000 on October 13, 2015. D. 5-1 ¶ 5. On October 30, 2015, PM issued an invoice in the amount of $6,826.44 for expenses related to this contract. D. 5-1 ¶ 6. Andover Healthcare paid this amount on December 30, 2016. Id. PM also issued an invoice for $11,807.50 of expenses related to this contract on February 9, 2016. D. 5-1 ¶ 7.

On or about September 11, 2015, the parties entered into a second contract, under which PM would provide Andover with additional consulting services for a fee of $100,000 plus expenses. D. 5-1 ¶¶ 8-9; D. 9-3 at 10. The contract stated that $100,000 was the "[e]stimated" fee for six weeks of work, based on the average hourly rates of partners, principals, managers and senior consultants. D. 9-3 at 10. The contract repeated the first contract's interest rate for late payments and stated that "[a]fter the initial six weeks of work," the parties would "determine whether additional support is needed for validation, and to what extent," noting that "[a]dditional work will be billed at the same rates." Id. The contract contained the same "Fee Quotes" provision as the first contract. D. 9-3 at 12. On February 9, 2016, PM provided Andover with an invoice associated with this contract, billing Andover for $206,292.67, including $179,860.00 for professional services and $26,432.67 for expenses. D. 5-1 ¶ 10.

On or about December 4, 2015, prior to receiving the invoice for the second contract, the parties entered into a third contract. D. 5-1 ¶ 11. This contract covered additional consulting services by PM, for an estimated fee of $82,500 plus expenses. D. 5-1 ¶ 12; D. 9-4 at 10. The fees provision included the hourly rates of the senior consultant and partner on the project,

provided the same interest rate as previously provided and stated that "[a]fter the initial 7 weeks of work over 5 months, Andover Healthcare and Plante Moran will determine whether additional support is needed for validation, and to what extent," to be billed at the same rates. D. 9-4 at 10. The third contract contained the same "Fee Quotes" provision as the first two contracts. D. 9-4 at 11. On February 9, 2016, PM issued an invoice to Andover for $410,198.26, including $397,987.50 for professional services and $30,216.76 for expenses relating to this contract. D. 5-1 ¶ 13. On September 8, 2016, PM issued an invoice for $27,233.00 for services and expenses "unattributable to any particular contract." D. 5-1 ¶ 14.

## IV. Procedural History

PM instituted this action on January 20, 2017. D. 1. Andover filed its answer and counterclaims on May 4, 2017. D. 5; D. 5-1. PM has now moved to dismiss Andover's counterclaims and strike its affirmative defenses. D. 9. The Court heard the parties on the pending motion and took the matter under advisement. D. 20.

## V. Discussion

### A. The Counterclaims

#### 1. Andover Has Stated a Claim for Breach of Contract

In a diversity action, the Court applies the choice-of-law rules of the forum state, which, in this case, is Massachusetts. See Volkswagen Grp. of Am., Inc. v. Peter McNulty Law Firm, 692 F.3d 4, 17 (1st Cir. 2012). Massachusetts courts will generally give effect to a contract's choice-of-law clause. See, e.g., Taylor v. E. Connection Operating, Inc., 465 Mass. 191, 194 (2013).

The contracts at issue provide, under the heading "Governing Law," that "[t]his agreement shall by governed by and construed in accordance with the laws of the State of Michigan." D. 9-2 at 12; D. 9-3 at 13; D. 9-4 at 13. Under Massachusetts law, this choice will be upheld unless (1) Michigan "has no substantial relationship to the parties or the transaction and there is no other

reasonable basis for the parties' choice," or (2) applying Michigan law "would be contrary to a fundamental public policy of a [s]tate which has a materially greater interest" than Michigan regarding the particular issue and would otherwise be the applicable law in the absence a contractual choice-of-law provision. See Taylor, 465 Mass. at 196 (quoting Restatement (Second) of Conflict of Laws, § 187(2)(b) (Am. Law Inst. 1971)).

Andover argues that "there is no evidence" that Michigan has a "substantial relation" to the contracts at issue. D. 12 at 5. A "substantial relationship" exists, however, between a corporation and the state in which its principal place of business is located. See Taylor, 465 Mass. at 197; Restatement § 187 cmt. f. As Andover itself alleged, PM's principal place of business is in Michigan. D. 5-1 ¶ 6. Andover has not argued that applying Michigan law would be contrary to any fundamental Massachusetts public policy here. Seeing no basis for applying the exception, the Court upholds the parties' contractual choice of law and applies Michigan law to this claim.

Under Michigan law, a breach of contract claim requires that a claimant show "by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." Miller-Davis Co. v. Ahrens Constr., Inc., 495 Mich. 161, 178 (2014). To state such a claim, the claimant must first provide "the terms of the contract" and demonstrate "a breach of one or more of those terms by defendant." Williams v. Saxon Mortg. Servs., No. 13-10817, 2014 U.S. Dist. LEXIS 24494, at *31-32 (E.D. Mich. Jan. 13, 2014); Yates v. U.S. Bank Nat'l Ass'n, 912 F. Supp. 2d 478, 486 (E.D. Mich. 2012). Andover alleges that PM breached the three contracts by failing to perform services it promised, render timely invoices and inform Andover that "its fees would vary substantially from its fee quotes." D. 5-1 ¶ 15. PM argues Andover's counterclaim fails as a matter of law because Andover has

failed to "identify any provision in any contract that has been breached by PM" or provide any meaningful detail regarding PM's failure to perform. D. 9-1 at 11-15; D. 16 at 2.

Andover's first two allegations fail to serve as a basis for a plausible claim for breach of contract. First, Andover's allegation that PM "failed to perform the services that it promised" is no more than a "[t]hreadbare recital[] of the elements of a cause of action" for breach of contract, Iqbal, 556 U.S. at 678, falling within a category of "legal labels and conclusions" that the Court does not credit, Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).[2] Second, Andover's allegations that PM failed to render timely invoices fails to suffice as a basis for a breach of contract claim here because Andover has not pointed to any contract terms establishing a timeliness requirement to the invoice procedure that PM purportedly breached here, as is required under Michigan law, see Yates, 912 F. Supp. 2d at 486.

Andover also alleges that PM's failure to inform Andover that its fees would vary was in breach of contract. D. 5-1 ¶ 15. At oral argument, Andover clarified that it was relying solely on the "Fee Quotes" paragraph contained in all three contracts, which contains an obligation that PM "endeavor to advise Andover" of costs above fee quotes, D. 9-2 at 11; D. 9-3 at 12; D. 9-4 at 12, as the basis for this breach of contract theory. As alleged, at least some of the fees PM charged were substantially higher than anticipated, and PM did not provide Andover with invoices for the second and third contracts until February 2016, with an additional invoice issued that September. D. 5-1 ¶¶ 7, 9-10, 12-14. Putting aside whether Andover ultimately will prevail in proving that

---

[2] Andover argues that its' pleading "is sufficient if it indicates generally the type of litigation involved and gives a generalized summary of the claim which affords fair notice to the adverse party." D. 12 at 5 (citing Frank v. Mracek, 58 F.R.D. 365 (M.D. Ala. 1973)). The standard that this Court must apply, however, requires that a claimant establish "facial plausibility" for each claim by providing factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

PM failed to satisfy its contractual promise to "endeavor to advise Andover" of costs above fee quote—particularly given the language, contained in the same sentence, that the parties "acknowledged that the exact impact on the Fee Quote may not be determinable until the conclusion of the engagement," D. 9-2 at 11; D. 9-3 at 12; D. 9-4 at 12—the Court cannot say that this counterclaim fails as a matter of law to state a plausible claim. Accordingly, the breach of contract counterclaim may go forward on this basis.

### 2. Andover Has Failed to State a Claim for Fraud or Negligent Misrepresentation

Claims of fraud, as well as claims that "effectively charge fraud," are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009); see Cabi v. Boston Children's Hosp., 161 F. Supp. 3d 136, 163 & n.8 (2016) (noting the split of authority regarding whether Rule 9(b) applies to all negligent misrepresentation claims, but applying heightened standard to both the intentional and negligent misrepresentation claims). Under Rule 9(b), the pleading party must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires that the pleading "specify the statements that the plaintiff contends were fraudulent" and why they were fraudulent, Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127-28 (1st Cir. 1994)), and otherwise "allege with particularity the who, what, when, where, and how of the fraud," D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st Cir. 2016).

In Massachusetts,[3] a claim for fraud requires a party to show "that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce

---

[3] Andover's fraud and misrepresentation claims are analyzed under Massachusetts law. As the First Circuit has explained, where a claim "concerns the validity of the *formation* of the contract,

8

the plaintiff's reliance and, through that reliance, created an injury." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 357 (1st Cir. 2013) (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). Negligent misrepresentation requires a claimant to show that the defendant "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information." Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 371-72 (2009). The Court analyzes Andover's fraud and negligent misrepresentation claims together here.

Andover alleges that PM: "knowingly and falsely represented to Andover Healthcare that its consultants possessed specialized education, knowledge, training, experience, and expertise; that it would give consulting services which would provide significant and valuable assistance to Andover Healthcare in meeting its specific manufacturing needs and[] that these consulting services would be provided at or within certain estimated fees." D. 5-1 ¶ 18. Additionally, Andover alleges that PM "failed to disclose to Andover Healthcare that its actual fees for professional services and expenses related to the second contract . . . substantially exceeded its estimated fees before Andover Healthcare entered into the third contract." D. 5-1 ¶ 21. Andover's negligent misrepresentation claim largely repeat these allegations. D. 5-1 ¶¶ 23, 26.

This pleading falls short of the heightened pleading standard. First, Andover has failed to "specify the statements that [it] contends were fraudulent" and "explain why the statements were

---

it cannot be categorized as one involving the rights or obligations under the contract," and, therefore, falls outside of the contractual choice of law provision. Ne. Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co., 986 F.2d 607, 611 (1st Cir. 1993) (emphasis in original). PM thus contends Massachusetts law applies to this claim, D. 9-1 at 16, and Andover does not dispute it.

fraudulent," as is required. Suna, 107 F.3d at 68. Second, Andover has not provided any factual allegations surrounding the circumstances of the fraud. Andover argues that PM could deduce from the counterclaims the time when the purported misstatements occurred because they "naturally precede actually entering into a contract," and the dates of the contracts are known here. D. 12 at 3. Even if the Court engaged in such deduction, the time period at issue would be no more specific than some date prior to entry into three separate contracts, and the estimate would provide no further detail regarding other circumstances of the fraud. Cf. D'Agostino, 845 F.3d at 10. This is not the "particularity" Rule 9(b) contemplates.

Additionally, PM's alleged nondisclosure of its actual fees for the second contract prior to its signing the third, D. 5-1 ¶¶ 21, 26, cannot serve as a basis for Andover's negligent misrepresentation claim, as it does not contain any alleged supply of false information. See Gossels, 453 Mass. at 372. An allegation of omission or nondisclosure can serve as a basis for a fraud claim. See Sahin v. Sahin, 435 Mass. 396, 402 n.9 (2001). However, "[f]raud by omission requires both concealment of material information and a duty requiring disclosure." Id.; see Greenery Rehab. Grp. v. Antaramian, 36 Mass. App. Ct. 73, 78 (1994). Andover has not plausibly alleged that PM had a duty to disclose its adjusted fees for the second contract prior to December 4, 2015. As discussed above, the second contract expressly states that the fees may change and may not be determinable until performance is completed. D. 9-3 at 10-12. Especially in light of the heightened pleading standard of Rule 9(b), Andover has failed to plausibly allege fraud or negligent misrepresentation on this basis.

The Court thus dismisses Andover's second and third counterclaims.

    3.    *Andover Has Stated a Claim under Chapter 93A*

Finally, Andover alleges that PM engaged in unfair or deceptive acts in violation of Chapter 93A, Mass. Gen. L. c. 93A. Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," id. §2(a), and Section 11 provides a right of action to sue for unfair practices to any "person who engages in the conduct of any trade or commerce," id. §11. "An action is 'unfair' if it is '(1) within the penumbra of a common law, statutory, or other established concept of unfairness; [or] (2) immoral, unethical, oppressive, or unscrupulous.'" Gossels, 453 Mass. at 373 (quoting Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008)) (alteration in original). An act is "deceptive" if "it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Aspinall v. Philip Morris Cos., 442 Mass. 381, 395 (2004) (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)) (alteration in original).

PM argues that Andover's Chapter 93A claim fails because it is predicated on Andover's faulty common law claims. D. 9-1 at 21-22. To prove a claim under this chapter, however, "it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009). More specifically, an unfair or deceptive act or practice "goes far beyond the scope of the common law action for fraud or deceit." Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975).

Andover has alleged deception on PM's part in charging fees substantially higher than established in the second and third contracts and delaying its invoices to induce further contractual relations between the parties. D. 5-1 ¶¶ 21, 26-27. "Allegations sounding in fraud and misrepresentation can form the basis for a claim of unfair and deceptive trade practices" even if the party does not state a common-law claim. Speakman v. Allmerica Fin. Life Ins. & Annuity Co., 367 F. Supp. 2d 122, 141 (D. Mass. 2005); see V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d

411, 417 (1st Cir. 1985) (explaining that a party need not "allege more than a failure to disclose a material fact to state a cause of action under chapter 93A"). Thus, although Andover has failed to state a fraud or negligent misrepresentation claim, the same conduct, taking Andover's factual allegations as true and giving Andover the benefit of all reasonable inferences therefrom, provides a sufficient basis for a Chapter 93A counterclaim at this juncture.

### B. PM's Motion to Strike Andover's Affirmative Defenses

PM has moved to strike Andover's affirmative defenses of fraud and failure of consideration, D. 5 at 5, pursuant to Fed. R. Civ. P. 12(f). D. 9. At oral argument, Andover withdrew its failure of consideration affirmative defense. See D. 20. The Court thus denies as moot PM's motion to strike as to this defense.

PM argues that Andover has failed to plead its affirmative defense of fraud with sufficient particularity under Rule 9(b). D. 9-1 at 22. Rule 9(b) applies to "all averments of fraud or mistake," Fed. R. Civ. P. 9(b), including affirmative defenses. See PetEdge, 2017 U.S. Dist. LEXIS 66663, at *5-8 (dismissing affirmative defense alleging fraudulent conduct under Rule 9(b)); Trs. of the Local 813 Ins. Tr. Fund v. Wilner's Livery Serv., Inc., No. 11-cv-3180 (DLI), 2012 U.S. Dist. LEXIS 135606, *14-15 (E.D.N.Y. Sept. 19, 2012) (same); Yurman Design, Inc. v. Chaindom Enters., No. 99-cv-9307 (JFK), 2002 U.S. Dist. LEXIS 18329, at *5 (S.D.N.Y. Sept. 27, 2002) (stating that "[d]efendants must plead their affirmative defenses alleging fraud with the particularity required by Fed. R. Civ. P. 9(b)"); Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 901 n.7 (E.D. Pa. 2011). For the reasons discussed above, Andover's allegations of fraud do not meet this standard. The Court thus strikes Andover's first affirmative defense.

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part PM's motion, D. 9.  PM's motion to dismiss is ALLOWED as to Andover's fraud and negligent misrepresentation claims, but it is DENIED as to Andover's claims alleging breach of contract and unfair and deceptive practices under Chapter 93A.  PM's motion to strike Andover's affirmative defenses is ALLOWED as to Andover's affirmative defense of fraud, but DENIED AS MOOT as to Andover's affirmative defense of lack of consideration in light of Andover's withdrawal of this affirmative defense.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge